LOUIS L BEST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Best v. Commissioner
Docket Nos. 5879-88; 589-88
United States Tax Court
T.C. Memo 1990-20; 1990 Tax Ct. Memo LEXIS 20; 58 T.C.M. (CCH) 1178; T.C.M. (RIA) 90020; January 11, 1990
Louis L. Best, pro se. Donald P. Krainess, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined the following Federal income tax deficiencies and additions to tax in these consolidated cases: Additions to Tax Taxable
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a) [2]
Sec. 6654
Sec. 6661 1982
$ 11,290.00
$ 2,256.25
$ 564.50
$   823.39
$ 2,822.50
1983
17,216.00
4,014.75
860.80
1,127.44
4,304.00
*23 After various concessions by the parties, the following issues remain for our consideration: (1) Whether petitioner is entitled to losses from farming in the amounts of $ 4,797.28 and $ 5,032.81 for 1982 and 1983, respectively; (2) whether petitioner is liable for additions to tax under sections 6651(a)(1), 6653(a), 6654, and 6661 for the taxable years 1982 and 1983; and (3) whether the 3-year period for assessment had expired at the time respondent issued the notices of deficiency in these consolidated cases. FINDINGS OF FACT The parties entered into a stipulation and supplemental stipulations of facts, along with attached exhibits, all of which are incorporated by this reference. Petitioner, Louis L. Best, resided at Napa, California, at the time that his petitions were filed in these cases. Petitioner filed Federal income tax returns for 1982 and 1983 designating the married filing separately status. These returns were received by respondent's Ogden, Utah, Service Center on February 3, 1988. Petitioner reported income and deductions based upon the cash method of accounting for the 1982 and 1983 taxable years. During 1982 and 1983, petitioner was employed as a boilermaker *24 and earned wages of $ 36,612 and $ 50,740, respectively, from his trade. During the same period, petitioner, his wife, and three minor daughters resided on a 5-acre parcel of land on which there was situated petitioner's residence and a large barn. Petitioner had moved to this farm property, in part, because he had been raised on a farm and wanted to live in the "country" where he could do a better job of raising his children. Petitioner's trade as a boilermaker caused his absence from home for weeks at a time. Petitioner's wife and children devoted some time to raising calves. Petitioner did not maintain a checking account. Prior to 1982, petitioner had maintained horses on the property for his daughters; however eventually the daughters grew tired of the horses. Some time in 1978, after petitioner had mainly grazed cattle and sheep, he decided to purchase new calves, bottle-feed them, and sell them when they were sufficiently fattened for market. Half of the new calves perished from improper formula and the calf operation was otherwise unsuccessful and unprofitable. Petitioner did not attempt a breeding operation because the farm was too small. In 1981, petitioner purchased *25 a milk cow to provide milk for the calf operation, but the milk cow died during 1981. Beginning in 1982, petitioner changed his approach by acquiring three young heifers which he intended to hold until they were capable of breeding. The breeding was unsuccessful and the heifers never produced milk. During 1982 and 1983, petitioner did not acquire or maintain any animals other than the three heifers. Petitioner did not report any income from farm activity for 1982 or 1983. Petitioner claimed expenses and depreciation comprising losses totaling $ 4,797.28 and $ 5,032.81 for 1982 and 1983, respectively. Petitioner terminated the farm activity in 1986. Petitioner's farm activity resulted in the following reported items of income and deductions: Sales
Cost of
Gross Profit
Other
Gain or
Year
Proceeds
Sales
or (Loss)
Deductions
(Loss)
1978
$ 2,168.58
* $ 2,243.06
$   (74.48)
$  8,066.42
($ 8,140.90)
1979 ** 3,787.77
961.50
2,826.27 10,079.48
(7,253.21)
1980
1,818.77
1,328.50
510.27 10,922.17
(9,321.90)
1981
1,387.21
653.55
733.66 10,352.61
(9,618.95)
1982
-0-   -0-   -0-    4,797.28
(4,797.28)
1983
-0-   -0-   -0-    5,032.81
(5,032.81)
1984
163.84
-0-   163.84 7,889.99
(7,726.15)
*26 The expenses and depreciation claimed by petitioner for his 1982 and 1983 farming activity was comprised of the following amounts: Type of Expense or Depreciation
1982
1983
Repairs, Maintenance
$   585.40
$   796.19
Feed
643.28
799.41
Gasoline, Fuel, Oil
114.40
243.40
Insurance
100.00
100.00
Utilities
247.25
232.25
Seeds, Plants
-0- 306.75
Supplies
-0- 109.49
Depreciation-Barn
1,040.00
1,040.00
Depreciation-Cement Mixer
82.60
82.60
Depreciation-1978 Truck
1,984.35
1,322.72
Total Loss Claimed
$ 4,797.28
$ 5,032.81
On December 28, 1987, an employee in respondent's Ogden, Utah, Service Center, wrote to petitioner advising that there was no record of his having filed 1982 or 1983 Federal income tax returns. In the letter, petitioner was further advised that he should either send photocopies of the returns he had filed or that *27 he should file returns by January 28, 1988. Petitioner, by a letter dated January 27, 1988, forwarded photocopies of the retained 1982 and 1983 copies of returns which he alleged had been filed prior to January 27, 1988. Petitioner's purportedly retained copies reflected balances of tax due in the amounts of $ 4,851.94 and $ 11,561.23 for 1982 and 1983, respectively. The photocopies were accepted by respondent, and assessments of tax, after giving petitioner full credit for withholding and excess employment tax, were made on March 21, 1988, based upon the amounts shown on the photocopied returns. Respondent's records reflect that, prior to January 27, 1988, no return had been filed by petitioner for 1982 or 1983. The specific record reflecting that no returns had been filed was from the National Computer Center, which is a compilation of return filing information from all Internal Revenue Service districts. Respondent's records also reflect that, for petitioner's 1982 taxable year, a "substitute return" containing only petitioner's name, address, and Social Security number was prepared by respondent to "establish a module" and facilitate an assessment of a $ 500 penalty for *28 the filing of a false Form W-4. The assessment of the $ 500 penalty was accomplished on November 21, 1983. During 1984, five payments were received and applied against the $ 500 assessment. A "substitute return" was prepared by respondent for petitioner's 1983 taxable year on November 23, 1987; however no $ 500 penalty assessment was ever made for petitioner's 1983 taxable year. The State of California's Franchise Tax Board conducted an amnesty program from December 10, 1984, to March 15, 1985. Petitioner, on March 7, 1985, filed California tax returns for the 1982 and 1983 taxable years. Under the amnesty program, petitioner's obligation to pay penalties to the State of California for the failure to file and/or late filings were waived. OPINION Three major categories of issues are in controversy. Generally, the parties disagree about whether the period of limitations on assessment is open for 1982 and 1983, whether petitioner is entitled to claim losses from farming activity, and whether the additions to tax are applicable. Statute of Limitations - Additions to Tax for Failure to File Returns
Petitioner has taken a two-pronged approach in his argument that the *29 3-year period within which respondent may assess under section 6501(a) has expired. First, he argues that he timely filed returns, the copies of which were supplied to respondent when requested in 1987. His second argument is that the substitute return, prepared by respondent under section 6020(b) in order to assess a $ 500 penalty against petitioner for filing a false Form W-4 for 1982, began the running of the 3-year period under section 6501(a). Section 6501(a) provides for a 3-year period from the time a return is filed within which respondent may initiate deficiency procedures and/or assess income tax. The notices of deficiency in this case were mailed to petitioner on January 11, 1988, which date is more than 3 years from the due date of petitioner's 1982 (April 15, 1983) and 1983 (April 15, 1984) income tax returns. If petitioner timely filed these returns, then respondent's mailing of the notices of deficiency would not have been within the 3-year period. We find that petitioner did not file 1982 and 1983 Federal income tax returns until such time as he submitted the alleged copies of 1982 and 1983 returns in response to respondent's December 28, 1987, letter advising *30 that there was no record of 1982 and 1983 returns having been filed. The evidence we have considered in reaching our conclusion includes: (1) Although petitioner testified that he timely mailed the returns to respondent, he offered no evidence of the mailing; (2) the alleged returns both reflected a balance due and petitioner has not offered evidence of payment of the balances; (3) prior to 1985, petitioner was assessed and he paid a $ 500 penalty for filing a false W-4; (4) although it is possible that respondent could have misplaced a taxpayer's return, it is much less likely that respondent would misplace two separately filed returns and/or fail to record and attempt to collect balances reported due by a taxpayer; (5) respondent's records reflect that no returns were received from petitioner for 1982 or 1983. Having decided that petitioner did not file a 1982 or 1983 return which would have placed respondent's notices of deficiency outside of the 3-year statutory period, we must consider petitioner's alternative argument that the section 6020(b) substitute return for 1982 began the running of the period within which respondent could assess a tax deficiency. Respondent prepared *31 a substitute return under section 6020(b) on or about November 21, 1983. Petitioner argues, and he is correct, that respondent's notice was mailed more than 3 years from respondent's preparation of a substitute return and assessment of the $ 500 penalty for 1982. Although petitioner has made an interesting point, Congress anticipated this possibility and enacted section 6501(b)(3) which provides that a return executed by respondent under section 6020(b) "shall not start the running of the period of limitations on assessment and collection." Accordingly, the period of limitations for 1982 had not expired at the time respondent mailed the notice of deficiency for that year to petitioner. Petitioner bears the burden of proof and he has failed to show that he timely filed 1982 and 1983 returns or that the period of limitations had expired at the time of the mailing of the notices of deficiency. That being the case and because petitioner has supplied no other reason for the delinquencies in filing, he is liable for additions to tax under section 6651(a)(1) for 1982 and 1983. Loss from Farming
We must consider whether petitioner's operation of his farm was an activity not engaged *32 in for profit. Section 183 disallows certain deductions attributable to an activity not engaged in for profit. [3] An "activity not engaged in for profit" is defined by section 183(c) as any activity other than one for which deductions are allowable under section 162 (relating to trade or business expenses) or section 212(1) or 212(2) (relating to expenses for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income). *33 Farming is an activity which may constitute a trade or business for purposes of section 162. A taxpayer need not prove that he had a reasonable expectation of profit in order to establish that he engaged in the activity for profit; he must show, however, that he entered into or continued the activity with the actual and honest objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). In determining the taxpayer's purpose, greater weight is given to objective facts than to the taxpayer's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs.
All facts and circumstances that bear on the activity are to be taken into account in determining whether it was engaged in for profit. Sec. 1.183-2(b), Income Tax Regs. Included in the regulation are nine factors as among those that should normally be considered: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or *34 his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the presence of elements of personal pleasure or recreation. No single factor is controlling. Golanty v. Commissioner, supra at 426; Dunn v. Commissioner, 70 T.C. at 720. Petitioner argues that he was engaged in the business of farming. Respondent contends that petitioner's farm operation was not a business. We agree with respondent. In support of the argument that his farm operation was a business, petitioner asserts that "there is no substantial evidence in this case that [he] did or failed to do anything which indicates that he did not intend a for-profit activity." Petitioner argues that respondent must show that a profit was not intended. Petitioner's reliance on this argument is misplaced *35 because he bears the burden of showing that he intended to make a profit. Although petitioner testified that he intended to make a profit, we find that the record does not support petitioner's testimony. Greater weight is given to objective factors than to petitioner's statement of intent. Sec. 1.183-2(b), Income Tax Regs.; Dreicer v. Commissioner, supra.
Our conclusion was reached after considering various factors in the record. Petitioner, although raised on a farm, did not exhibit that he possessed the expertise, nor did he seek information or assistance, to successfully raise milk-fed calves. Additionally, during the 2 years before the Court he ostensibly had abandoned the calf activity and maintained only three heifers. After a static first year, petitioner did not take any steps or establish a plan which reflected an intention to make a profit in the heifer activity. Petitioner, who was attempting to provide a farm-type environment for his children, possessed farm experience, but he was away a large part of the time and his wife and children tended to the animals. Petitioner did not segregate the financial aspects of his farm operation by means of *36 a checking account, and no profits were generated over an extended period of time. Petitioner argues that, at least in the earlier years of his farm activity, he experienced gross profits from his farming, and that represented a cash profit even though he may have had a "paper" loss. Our review of petitioner's financial results for pre-1982 years reflects that his farming activity resulted in "out-of-pocket" or cash losses in each year, although in some of those years a gross profit was reported. This analysis, in this case, results from considering the net profit with and without depreciation. Depreciation, however, is a reflection of the apportioned use of an asset over a period of more than 1 year and cannot be ignored in a true profit analysis. Moreover, the amount of gross profit from farming as a ratio to the deductions claimed results in gross profits which are less than 10 percent of the deductions, including depreciation and approaching 20 percent without considering depreciation. Accordingly, it can be seen that a gross profit analysis, especially in this case, does not present a fair and meaningful analysis of petitioner's profitability from farming. In summary, we *37 conclude that petitioner's farm operation was not an activity engaged in for profit. Considering the record as a whole, we reach the conclusion that petitioner's objective was to provide a farm-type environment for his family. He maintained a sufficient number of animals to achieve that end, but not enough animals or activity to seek a profit. Accordingly, the losses claimed by petitioner from farm activity are allowable only as provided in section 183(b). Remaining Additions to Tax
We have already held that petitioner is liable for the section 6651(a)(1) addition to tax for failing to timely file 1982 and 1983 Federal income tax returns. Respondent also determined that petitioner was liable for additions for tax under sections 6653(a)(1), 6653(a)(2), 6654, and 6661. Petitioner bears the burden of proof with respect to these additions to tax. Welch v. Helvering, 290 U.S. 111 (1933); New Colonial Ice Co. v. Commissioner, 292 U.S. 435 (1934); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). Having found that petitioner failed to file his 1982 and 1983 returns and because he has not shown that such failure *38 was due to reasonable cause and that he had not underpaid his estimated tax, we find that petitioner is liable for the additions to tax under sections 6653(a)(1) and (2) and 6654. Emmons v. Commissioner, 92 T.C. 342, 347-350 (1989). Section 6661 provides for a 25-percent addition to tax if there is a substantial understatement of income tax for any taxable year. A substantial understatement occurs if the understatement is at least 10 percent of the tax required to be shown on a return or $ 5,000. Sec. 6661(b)(1)(A). Because petitioner has not shown that the understatement was due to an item for which there was "substantial authority" or that "the relevant facts affecting the item's tax treatment [were] adequately disclosed in [his] return," the section 6661 addition to tax is generally applicable if the 10 percent or $ 5,000 threshold is reached after considering concessions and any withholding credits to which petitioner may be entitled. Although we hold section 6661 to be otherwise applicable, we condition our holding upon the results of the Rule 155 computations. To reflect the foregoing and concessions of the parties, Decisions will be entered under *39 Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue, and rule references are to this Court's Rules of Practice and Procedure. ↩
2. In both notices of deficiency, respondent determined that petitioner was liable for additions to tax under secs. 6653(a)(1) and 6653(a)(2). The amount of the addition for each year under sec. 6653(a)(2) is only determinable after we have decided the deficiencies and other additions to tax.↩
*. Petitioner apparently transposed the sales proceeds and cost of sales on his 1978 Schedule F, and we have reversed them for improved coherence. ** For earlier years, some income was reported from "Machine work." In 1979, the amount attributable to "Machine work" was $ 1,936.00.↩
3. SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) General Rule. -- In the case of an activity engaged in by an individual * * *, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) Deductions Allowable. -- In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed -- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).↩